IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0401-09






AMBER LOVILL, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


NUECES COUNTY





 Keasler, J., delivered the opinion of the Court in which Keller, P.J., Meyers,
Price, Womack, Hervey, Holcomb, and Cochran, JJ., joined. Johnson, J., filed
a concurring opinion in which Womack and Cochran, JJ., joined. 


O P I N I O N 



 The Corpus Christi Court of Appeals held that Amber Lovill's selective prosecution
complaint was preserved because, among other things, everyone understood her complaint
and she presented a selective prosecution complaint in a motion for a new trial. (1) We
disagree. Under the particular facts here, Lovill forfeited her selective prosecution complaint
for appellate purposes because her revocation proceeding statements were not specific and
timely as required by Rule 33.1 of the Texas Rules of Appellate Procedure. 

Background The State charged Lovill with two counts of forgery. In January 2005, pursuant to a
plea agreement, Lovill pled guilty to the charges and filed an application for probation. After
accepting Lovill's pleas and finding her guilty, the trial judge sentenced Lovill to two years'
confinement in a state-jail facility. The judge also ordered Lovill to pay a $1,000 fine and
$700 in restitution. In accordance with the plea agreement, the judge suspended the term of
imprisonment and placed Lovill on community supervision for three years. The trial judge
directed Lovill to comply with several terms and conditions while under supervision. Some
of those terms and conditions required Lovill to: 

  "Avoid injurious or vicious habits and or [sic], avoid the use of . . . narcotics
or any other controlled substances and submit to testing/blood
analysis/urinanalysis [sic] as directed . . . "


  "REPORT TO THE CSCD [(Community Supervision and Corrections
Department)] OFFICER AS DIRECTED and at least once a month"; 


  Pay a number of fees associated with her supervision; 


  "Participate in the SPECIALIZED CASELOAD for SUBSTANCE ABUSE
Program;" and


  "[S]atisfactorily participate in a screening/assessment for substance abuse and
submit to any counseling, urinanalysis [sic], and/or any diversionary program
as determine[d] within the CSCD's TREATMENT ALTERNATIVE TO
INCARCERATION PROGRAM (TAIP)." 


 The State filed its first motion to revoke Lovill's supervision in September 2005. 
Lovill entered pleas of true to several allegations contained in the motion, including the
allegation that she failed to comply with CSCD's TAIP because of non-attendance. The trial
judge did not revoke Lovill's supervision but sanctioned her and amended the terms and
conditions of her supervision. The judge specifically ordered Lovill to serve a term of
confinement in the county Substance Abuse Treatment Facility (SATF). The terms and
conditions of Lovill's supervision were amended to include special conditions associated
with the SATF term of confinement. 

 On July 17, 2007, the State filed a second motion to revoke Lovill's supervision. The
State alleged that Lovill failed to comply with the terms and conditions of her supervision
by: (1) using amphetamine; (2) failing to report to her CSCD officer in the months of May,
June, and July 2007; (3) failing to attend the SATF aftercare program as directed; and (4)
failing to pay fines, restitution, costs, and fees. At the revocation hearing, Lovill entered
pleas of true to all four allegations. The judge accepted the pleas and allowed the parties to
present evidence. 

 The State called Sandra Garza, Lovill's community-supervision officer. When asked
about the Probation Department's recommendation, Garza stated, "The recommendation is
that she be sanctioned to the Substance Abuse Felony Punishment Facility [(SAFPF)], special
needs unit." Garza cited Lovill's use of drugs as a reason and stated that Lovill should be
placed in a special needs unit because of her pregnancy. On cross-examination, Garza stated
that Lovill's use of drugs and pregnancy "drove this violation report" and that Lovill's
pregnancy was a "high concern of ours." When asked whether the recommendation would
be the same if Lovill were not pregnant, Garza gave no definitive answer; but she stated that
the Department does "work" with some people who have tested positive for drugs. And
when asked about alternative programs, Garza maintained that Lovill would benefit more at
a SAFPF so she could get treatment. 

 Lovill's defense attorney called Lovill to testify. She maintained that she would like
to continue community supervision and be placed in "CASA," an outpatient drug-treatment
facility, so that she would be able "to keep her baby" with her. When asked about an
alternative, Lovill stated that she would "take the year state jail." 

 In summation, Lovill's attorney asked the judge to reject Garza's recommendation:

 Your Honor, on behalf of Ms. Lovill, I would ask the Court to continue
her on probation. It is obvious probation would have worked with her, but for
the fact that she is pregnant and they decide to revoke her and send her off to
SAFP[F] without even giving Ms. Lovill an opportunity to maybe work with
probation even though she is pregnant. She is willing to go to CASA or some
other treatment facility that is local; so she can have her baby and not to have
to go to prison, Your Honor. She had like a year left or so on her probation,
so she would like to try to and finish out her probation and put this case behind
her. She understands that that was poor judgment in her case with testing
positive . . . .

 In the alternative, if the Court sees fit to revoke her, she would like to
do one year and not have to go to SAFP[F] at all. 

 In response, pointing to Lovill's drug use while pregnant, the State asked the trial
judge to follow Garza's recommendation. 

 The judge found that Lovill violated the terms and conditions of her supervision. But
instead of revoking her supervision, the judge extended her term of supervision and ordered
her to a SAFPF for three to twelve months.

 Lovill filed a motion for a new trial alleging that she was subjected to selective
prosecution, because of her pregnancy, in violation of the Equal Protection Clauses to the
United States and Texas Constitutions, the Due Process Clause to the United States
Constitution, the Texas Constitution's due course of law provision, and the Texas Equal
Rights Amendment. After holding a hearing, the trial judge denied the motion. Lovill filed
a motion to amend the conditions of her probation, which the trial judge denied. Lovill then
sought habeas corpus relief under Article 11.072, arguing that she had been selectively
prosecuted because of her gender. The trial judge denied relief, finding that the State did
not move to revoke Lovill's supervision because of her pregnancy. 

Court of Appeals

 Lovill appealed the trial judge's denial of her 11.072 application for a writ of habeas
corpus to the Thirteenth Court of Appeals. (2) The court of appeals rejected three separate
arguments made by the State that Lovill forfeited her right to mount a selective prosecution
complaint on appeal. (3) We will review only one of the court of appeals's forfeiture holdings
because the other forfeiture conclusions and the court's consideration of the merits of
Lovill's claim are not necessary to our disposition. Relevant to our disposition, the court
rejected the State's assertion that Lovill forfeited her selective prosecution complaint because
Lovill failed to object on this basis at the revocation hearing. (4) The court of appeals held that
Lovill's statements at the hearing preserved her claim for review. (5) At the hearing, Lovill's
attorney informed the trial judge that the State moved to revoke her supervision because of
her pregnancy. (6) According to the court, the trial judge and the parties understood the
substance of Lovill's complaint. (7) The State responded to the argument, and the record shows
that the trial judge understood Lovill's objection when the judge stated, "Well, I think the
fact that she tested positive is the reason we are all here, right, not for the fact that she is
pregnant." (8) The court also determined that a selective prosecution complaint may "be raised
at various times during a criminal proceeding." (9) Citing our decision in Satterwhite v. State,
the court observed that we reviewed Satterwhite's selective prosecution claim that had been
raised in a motion for a new trial. (10)

State's Petition for Discretionary Review

 We granted seven grounds from the State's Petition for Discretionary Review. The
sole ground for review that we address is whether the court of appeals erred in concluding
that Lovill's selective prosecution complaint was preserved by a specific and timely
complaint at trial. Because our resolution of this case is responsive to only one of the 
grounds for review that we granted and it is not necessary for us to address the other grounds,
we dismiss the remaining grounds for review. 

Analysis

 Texas Rule of Appellate Procedure 33.1, which establishes the requirements for
preserving a complaint for appellate review, governs this case. (11) To preserve a complaint for
appellate review, the record must show that a specific and timely complaint was made to the
trial judge and that the trial judge ruled on the complaint. (12) The specificity requirement is
met if the complaint made at trial was clear enough to the trial judge so as to permit the trial
judge to take corrective action when the complaint was made. (13) The complaining party must
have informed the trial judge what was wanted and why the party was entitled to it. (14) A
complaint will not be preserved if the legal basis of the complaint raised on appeal varies
from the complaint made at trial. (15) A party's complaint is regarded as timely when it was
"made as soon as the ground for complaint is apparent or should be apparent." (16)

 Consistent with our preservation jurisprudence, in Gawlick v. State, we held that
Gawlick did not preserve his selective prosecution complaint for appellate review because
he failed to object on this basis at trial. (17) Thus, we concluded that Gawlick forfeited his
selective prosecution complaint. (18)

 Here, we must determine whether the court of appeals erred in holding that Lovill's
complaint was specific and timely as required by Rule 33.1. Based on the particular facts and
circumstances here, we conclude that the court erred. First, Lovill's statements during the
revocation hearing were not specific enough to apprise the trial judge that she was
complaining about gender-based selective prosecution in violation of her constitutional
rights. Lovill did contend that but for her pregnancy, the Probation Department would not
have reported her failure to comply with the terms and conditions of her supervision to the
District Attorney's Office. Continuing, she asserted that the District Attorney would not
have moved to revoke her supervision if she had not been pregnant. However, at no time did
Lovill challenge the legality of the entire revocation proceeding on the basis of gender-based
selective prosecution or discrimination. (19) While not always required, when a legal claim is
rarely urged, like this one, (20) the complaining party should invoke the controlling federal and
state constitutional provisions or use key legal phrases to ensure that the trial judge is
informed of the particular complaint. (21) She could have used the words selective prosecution
or equal protection under the law or cited the Equal Protection Clause. But Lovill did none
of this. Her complaints went only towards mitigating the consequences that the trial judge
was considering following her pleas of true. She used the State's consideration of her
pregnancy as way to challenge the Probation Department's recommendation that she be
placed in a SAFPF. She asked to be placed in an out-patient drug-abuse program or to serve
a year in state jail. Her arguments for a lesser form of punishment than that recommended
by the State did not adequately inform the trial judge that the revocation proceedings, as
initiated, were discriminatory and therefore violated her constitutional rights. (22) Additionally,
we disagree with the court of appeals's assertion that the trial judge understood that Lovill
was advancing a selective prosecution complaint. Taken in context, the trial judge's
response--"I think the fact that she tested positive is the reason we are all here, not for the
fact that she is pregnant"--indicated only his understanding that Lovill wanted the case to
be resolved in her favor. The judge's statement does not indicate that he understood Lovill's
arguments to be a challenge based on discriminatory selective prosecution. Our
determination that Lovill's complaint lacked the requisite specificity under the circumstances
here is plainly shown when her trial complaints are compared to her subsequent, finely tuned
contentions that she presented in her motion for new trial and 11.072 application for a writ
of habeas corpus. In her motion and application, she challenged the initiation of the
proceedings on constitutional grounds, arguing that she was subjected to selective
prosecution, and contended that a dismissal of the prosecution is the only appropriate
remedy. (23) 

 Next, we conclude that the court of appeals erred in holding that Lovill's complaint
was timely. The first time that she specifically informed the trial judge that she was
challenging the constitutionality of the revocation proceedings based on selective
prosecution, as required by Rule 33.1, was in her motion for a new trial. But this was not the
first time that the basis of her complaint was apparent. The factual basis underlying her legal
complaint became apparent when Garza testified at the revocation proceedings. Lovill took
the factual basis into consideration at that time when arguing for lesser punishment. 
However, as stated above, she did not assert a particular legal theory and did not use the
requisite specificity. Further, the court of appeals erred in relying on our decision in
Satterwhite to conclude that a motion for a new trial claiming selective prosecution is
sufficient for preservation purposes. (24) We did not address the preservation requirement in
Satterwhite. Silence on the issue does not mean that we issued a ruling contrary to the
decision that we render today. In fact, given our prior decision in Gawlick, we could not
have made such a determination. Additionally, the systemic nature of error preservation was
not necessarily ingrained in our jurisprudence until the early 1990's, (25) years after we issued
Satterwhite. Conclusion

 We conclude that the court of appeals erred in holding that Lovill's selective
prosecution complaint was preserved for appellate review. As a result, we reverse the court
of appeals's judgment and affirm the trial judge's decision to deny Lovill's 11.072
application, although for a different reason than that stated by the trial judge. (26) 


DATE DELIVERED: December 16, 2009

PUBLISH

 
1. Lovill v. State, 287 S.W.3d 65, 76-77 (Tex. App.--Corpus Christi 2008). 
2. Lovill, 287 S.W.3d at 69.
3. Id. at 74-77.
4. Id. at 76-77. 
5. Id. at 76.
6. Id. 
7. Id. 
8. Id. 
9. Id. 
10. Id. (citing Satterwhite v. State, 726 S.W.2d 81, 84 (Tex. Crim. App. 1986). 
11. Tex. R. App. P. 33.1; see also Tex. Code Crim. Proc. Ann. art. 11.072, § 8;
Tex. R. App. P. 1.1 ("These rules govern procedure in appellate courts and before
appellate judges and post-trial procedure in trial courts in criminal cases."); Tex. R. App.
P. 31.1 ("Filing the Record; Submission"); Tex. R. App. P. 31.2 ("Hearing"); Tex. R. App.
P. 31.3 ("Orders on Appeal"). 
12. Tex. R. App. P. 33.1(a). 
13. Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting Lankston
v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).
14. Id.
15. Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (citing
Euziere v. State, 648 S.W.2d 700, 703-04 (Tex. Crim. App. 1983)). 
16. Aguilar v. State, 26 S.W.3d 901, 906 (Tex. Crim. App. 2000) (Wilson v. State, 7
S.W.3d 136, 146 (Tex. Crim. App. 1999); Hollins v. State, 805 S.W.2d 475, 477 (Tex.
Crim. App. 1991)). 
17. Gawlick v. State, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980); see also United
States v. Huber, 404 F.3d 1047, 1054 (8th Cir. 2005) (holding that appellant's selective
prosecution claim was forfeited by his failure to lodge a timely pretrial objection); United
States v. Bryant, 5 F.3d 474, 476 (10th Cir. 1993) (same).
18. Gawlick, 608 S.W.2d at 673; see also Marin v. State, 851 S.W.2d 275, 279
(Tex. Crim. App. 1993) (rights belonging to a litigant are subject to forfeiture).
19. See United States v. Armstrong, 517 U.S. 456, 463 (1996) ("A
selective-prosecution claim is not a defense on the merits to the criminal charge itself, but
an independent assertion that the prosecutor has brought the charge for reasons forbidden
by the Constitution.").
20. Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 490 (1999)
("Even in the criminal-law field, a selective prosecution claim is a rara avis.").
21. Cf. Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); Reyna v. State,
168 S.W.3d 173, 179 (Tex. Crim. App. 2005); Heidelberg v. State, 144 S.W.3d 535, 543
(Tex. Crim. App. 2004).
22. See Resendez v. State, No. PD-0917-08, 2009 Tex. Crim. App. LEXIS 1439, at
*13 (Tex. Crim. App. Oct. 21, 2009) ("Only when there are clear contextual clues
indicating that the party was, in fact, making a particular argument will that argument be
preserved.").
23. Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886) (reversing based on selective
prosecution and remanding to lower court with "directions to discharge the petitioners
from custody and imprisonment."); Richard H. McAdams, Prosecution: Discovering the
Pitfalls of Armstrong, 73 Chi.-Kent L. Rev. 605, 653 n.144 (1998) ("The conventional
remedy for such claims is a dismissal of the criminal charge . . . ." and opining that "when
a defendant shows that the state would not have prosecuted him but for the illegitimate
factors of race, he is entitled to be free from prosecution, just as the similarly situated
persons of other races were legitimately free from prosecution.") (citing Duncan v. Perez,
445 F.2d 557 (5th Cir. 1971) (enjoining retrial); United States v. Steele, 461 F.2d 1148,
1152 (9th Cir. 1972); United States v. Crowthers, 456 F.2d 1074, 1080-81 (4th Cir.
1972); United States v. Robinson, 311 F. Supp. 1063, 1065-66 (D. Mont. 1969)). But see
Armstrong, 517 U.S. at 461 n.2 ("We have never determined whether dismissal of the
indictment, or some other sanction, is the proper remedy if a court determines that a
defendant has been the victim of prosecution on the basis of his race."). 
24. Lovill, 287 S.W.3d at 76.
25. Jones v. State, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997); Hughes v. State,
878 S.W.2d 142, 151 (Tex. Crim. App. 1992); Fuller v. State, 829 S.W.2d 191, 199 n.4
(Tex. Crim. App. 1992); Marin, 851 S.W.2d at 278. 
26. Cf. Ex parte Medellin, 223 S.W.3d 315, 322 (Tex. Crim. App. 2006); Ex parte
Dutchover, 779 S.W.2d 76, 77 (Tex. Crim. App. 1989).