**Affirmed and Opinion filed August 20, 2019.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-18-00401-CR

**RODNEY JAMES ROBLES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 8**
**Harris County, Texas**
**Trial Court Cause No. 2072804**

## OPINION

In this appeal from a conviction for prostitution, we consider several challenges to the constitutionality of a statute, as well as a challenge to the trial court's exclusion of evidence and its denial of two requested charge instructions. Finding no merit to any of the challenges presented, we affirm the trial court's judgment.

## BACKGROUND

Appellant was driving at night through a neighborhood known for prostitution when he noticed a woman on the sidewalk who was dressed provocatively in black and pink striped leggings. Appellant pulled into a parking lot and gestured at the woman, inviting her to come closer. When the woman approached and said that she was "working" (a slang term for prostituting), appellant responded that he desired to have sex with her in exchange for a fee. The woman told appellant to meet her at a park, and appellant drove away as instructed. The woman, who was actually an undercover officer, then gave a signal to a standby unit, which swooped in and made an arrest.

## DUE PROCESS CLAUSE

In a pretrial motion to quash the charging instrument, appellant challenged the constitutionality of the prostitution statute, which, at the time of the offense, provided in material part as follows: "A person commits an offense if, based on the payment of a fee by the actor or another person on behalf of the actor, the person knowingly (1) offers to engage, agrees to engage, or engages in sexual conduct; or (2) solicits another in a public place to engage with the actor in sexual conduct for hire." Act effective Sept. 1, 2015, 84th Leg., R.S., ch. 1273, § 1, 2015 Tex. Gen. Laws 4311, 4311 (amended 2017) (current version at Tex. Penal Code § 43.02).

Appellant argued that this statute ran afoul of multiple constitutional provisions, but the trial court overruled his motion in its entirety. Appellant now complains of that ruling in separate issues on appeal, and he begins by arguing that the statute violates his liberty interest under the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause encompasses both substantive and procedural components. *See Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016). When, as in this case, a party claims that a statute has deprived him of a right protected by substantive due process, our level of review depends on whether the right involved is fundamental or non-fundamental. *Id.* A right is fundamental if it is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). If the right involved is fundamental under this standard, then we review the challenged statute with strict scrutiny, which requires the government to show that the statute is narrowly tailored to serve a compelling state interest. *Id.* If, on the other hand, the right involved is non-fundamental, then our review of the statute is more deferential. *Id.*

The party claiming the deprivation of substantive due process has the initial burden of demonstrating that he has a constitutionally protected liberty interest at stake. *Id.* at 313–14. As the challenger here, appellant claims that he has a fundamental liberty interest to engage another adult in consensual sexual conduct. This characterization oversimplifies the right at issue.

"In a substantive-due-process inquiry, the framing of the right at issue is key to determining whether that right is so rooted in this nation's history as to be afforded the same heightened protections as other fundamental rights." *Id.* at 315. Here, the right at issue is more properly characterized as the right to engage another adult in consensual sexual conduct *for a fee*.

Appellant cites to several cases involving certain rights of sexual intimacy, beginning with *Lawrence v. Texas*, 539 U.S. 558 (2003), which invalidated the Texas statute against homosexual sodomy. That case has no bearing on our analysis here because the Supreme Court specifically noted that that case "does not

3

involve . . . prostitution." *Id.* at 578. Appellant also refers to *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), which involved restrictions on the right to marry, and *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008), which involved restrictions on the sale of sexual devices. None of these cases establishes that there is a deeply rooted right to engage another adult in consensual sexual conduct for a fee. Because appellant has not shown that this right is fundamental, we do not apply strict scrutiny.

Normally, if a statute is not subject to strict scrutiny, then a court may only perform a deferential form of review that considers whether the statute is rationally related to a legitimate governmental purpose. *See Schlittler*, 488 S.W.3d at 313. Appellant suggests that we should apply an intermediate level of scrutiny instead, relying on the Ninth Circuit's decision in *Witt v. Department of Air Force*, 527 F.3d 806 (9th Cir. 2008), which involved a challenge to the since-repealed policy known as "Don't Ask, Don't Tell." But *Witt* is not binding on us, and it is inapposite in any event because the Ninth Circuit restricted its intermediate level of scrutiny to as-applied challenges. *Id.* at 819. Appellant has framed his complaint here as a facial challenge to the prostitution statute, not as an as-applied challenge.

Even if appellant's complaint could be construed as an as-applied challenge, the Ninth Circuit has a more recent decision applying rational-basis review to a California statute that criminalizes prostitution. *See Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018). That case is more directly on point than *Witt*, and it aligns with precedent from the Texas Court of Criminal Appeals, which we are bound to follow. *See Schlittler*, 488 S.W.3d at 313. We therefore apply rational-basis review.

In a rational-basis review, we presume that the statute is constitutional. *See Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018). Appellant, as the

challenger of the statute, has the burden of overcoming this presumption, and because his challenge is against the statute as written, he must show that the statute operates unconstitutionally in all of its potential applications. *Id.* If we can determine that the statute is rationally related to even a single legitimate purpose, then our inquiry is at an end and the statute must be upheld. *Id.* at 698.

Appellant recognizes that three interests have historically been cited in defense of a statute against prostitution: (1) the statute acts as a deterrent to other crimes, like human trafficking and violence against women; (2) the statute acts as a deterrent to the spread of infectious diseases; and (3) the statute acts a deterrent to the commodification of sex.

Appellant admits that the State may validly assert the first of these interests, but he argues that the prostitution statute is unnecessary to achieve that interest because the State has already criminalized other offenses associated with prostitution. Appellant also admits that the second interest is valid, but he contends that the prostitution statute is unnecessary to achieve that interest because some studies have indicated that the decriminalization of prostitution may actually be safer and healthier for those who do prostitute. These are essentially policy judgments, which are insufficient to show that the statute is unconstitutional under the rational-basis standard. *Id.* ("Above all, a court should spurn any attempt to turn rational-basis review into a debate over the wisdom, eloquence, or efficacy of the law in question.").

As for the commodification of sex, appellant argues that this interest is illegitimate because it represents nothing more than the legislation of morality. We need not consider this argument because the other two interests are legitimate (as appellant himself admits), and the statute is rationally related to those interests. *See Erotic Serv. Provider*, 880 F.3d at 458 (holding that California's prostitution statute

"is rationally related to several important governmental interests, any of which support a finding of no constitutional violation under the Due Process Clause of the Fourteenth Amendment").

Appellant's due-process challenge is accordingly without merit.

## FREEDOM OF SPEECH

Appellant argues next that the prostitution statute is unconstitutional because it criminalizes mere solicitation, in violation of the First Amendment's guarantee of freedom of speech. We need not belabor our discussion of this point because this court, in an earlier decision, has already rejected appellant's exact argument. *See Young Sun Lee v. State*, 681 S.W.2d 656, 661 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (overruling a complaint that the prostitution statute "violates the First Amendment because it permits prosecution for a mere verbal statement"); *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388 (1973) ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes.").

## FREEDOM OF ASSOCIATION

Appellant's next challenge invokes the freedom of association, which the Supreme Court has described as encompassing "certain intimate human relationships." *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984). Appellant argues that the prostitution statute infringes on this freedom because the statute precludes prostitutes and their clients from enjoying their own intimate relationships.

Appellant misunderstands the meaning of "intimacy" that is contemplated by this constitutional protection. Appellant construes the word in a strictly sexual sense, but the Supreme Court was referring to those associations that "involve deep attachments and commitments," like the creation and sustenance of a family, the

6

raising and education of children, and the cohabitation with relatives. *Id.* at 619–20. These associations "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* at 620. Prostitution does not bear these hallmarks because, by their very nature, encounters between prostitutes and their clients are transactional and temporary. *Cf. Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987) (declining to recognize an intimate association in a business club where ten percent of members move away or drop out during a typical year).

We reject appellant's complaint that the prostitution statute runs afoul of the constitutional guarantee of freedom of association. *See Erotic Serv. Provider*, 880 F.3d at 458–59 (reaching the same conclusion with regards to California's prostitution statute).

## EQUAL PROTECTION CLAUSE

Following his conviction, appellant filed a motion for new trial, complaining that the prostitution statute was unconstitutional both on its face and as applied because it discriminated on the basis of sex, in violation of the Equal Protection Clause. The as-applied challenge presented a claim of selective prosecution, and in support of that claim, appellant attached to his motion a voluminous record showing that reverse-sting operations almost exclusively target men as the clients of prostitutes.

At the hearing on the motion for new trial, appellant abandoned his facial challenge to the statute, but he continued to argue that the statute was being applied selectively against men. The trial court denied the motion.

7

Now on appeal, appellant reasserts his facial challenge to the statute. We can dispose of this challenge on at least two procedural grounds. First, the facial challenge is not preserved because appellant abandoned it in the trial court and did not obtain an adverse ruling. *See* Tex. R. App. P. 33.1. Second, the facial challenge is inadequately briefed because appellant only mentions the facial challenge in a single sentence in a heading, completely unsupported by argument. *See* Tex. R. App. P. 38.1(i). Therefore, we need not perform any sort of merits analysis.

Appellant also reasserts his as-applied challenge, which has been preserved for appellate review.

Because we presume that a prosecution for the violation of a criminal law is undertaken in good faith and in a nondiscriminatory fashion, the burden falls on the defendant to establish a prima facie case of selective prosecution. *See Carreras v. State*, 936 S.W.2d 727, 730 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). When the claim of selective prosecution is asserted on the basis of sex, the defendant must make a threshold showing that the government declined to prosecute similarly situated suspects of the opposite sex. *Id.* at 729. The defendant must also demonstrate that the government's prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. *Id.* at 730.

Appellant asserts in his brief that "similarly situated women have engaged in criminal acts of prostitution . . . but these women have not been targeted by law enforcement or prosecuted for, much less accused, of their criminal conduct." Appellant has not directed our attention to any place in the record where this assertion is supported by the evidence. In fact, the argument section for this issue in appellant's brief contains no record citations whatsoever. Because appellant has not shown that he satisfied his burden of proof, we cannot say that the trial court abused its discretion by denying his claim of selective prosecution.

## VOID FOR VAGUENESS

Appellant argues next that the prostitution statute is unconstitutionally vague, but he does not challenge any particular words or phrases from the definition of the offense—perhaps because the Court of Criminal Appeals has already rejected that complaint. *See McCarty v. State*, 616 S.W.2d 194, 196 (Tex. Crim. App. 1981) ("The definition of prostitution as being a person who engages or agrees or offers to engage in sexual conduct with another person in return for a fee is not so vague as to make persons of common intelligence guess at its meaning."). Instead, appellant complains that the statute lacks "minimal guidelines to govern law enforcement" and that it enables law enforcement to "disproportionately and overwhelmingly target men over women in prostitution-related reverse-sting operations." These points essentially restate appellant's complaint of selective prosecution, which fail for the reasons explained above.

## EXCLUSION OF EVIDENCE

After the State rested its case in chief, the trial court conducted a hearing outside the presence of the jury to determine the admissibility of the defense's expert testimony. The expert was a clinical psychologist who had met with appellant on a single occasion to evaluate him for neurodevelopmental issues. After performing several tests, the psychologist determined that appellant fell on the autism spectrum and that he exhibited executive dysfunction, which is a type of impairment with impulse control and inhibition. The psychologist also determined that although appellant was twenty years old at the time of his arrest, his developmental age was only between the ages of fourteen and sixteen, and that he could be easily influenced by someone who is more intellectually sophisticated. The psychologist further opined that appellant had probably been influenced by the undercover officer in this case.

9

The State argued that the psychologist's testimony should be excluded on relevance grounds because there was no evidence that the undercover officer had entrapped appellant into committing an offense. Appellant countered that the psychologist's testimony was relevant because "the criminal intent began with law enforcement." The trial court agreed with the State and excluded the psychologist's testimony. Appellant now complains of that ruling, which we review for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

Conduct that merely affords a person with an opportunity to commit an offense is insufficient to raise the defense of entrapment. *See* Tex. Penal Code § 8.06. And here, no evidence was ever presented that the undercover officer did anything other than afford an opportunity for an offense to be committed. As the trial court explained at the end of the hearing, the undercover officer did not pull appellant over, she did not expose herself, and she did not "danc[e] like the hoochy-koochy." Based on this record, which showed that appellant initiated the encounter, we cannot say that the trial court abused its discretion by excluding the psychologist's testimony.

Appellant responds that the psychologist's testimony should have been admitted under *Jackson v. State*, 160 S.W.3d 568 (Tex. Crim. App. 2005) and *Ruffin v. State*, 270 S.W.3d 586 (Tex. Crim. App. 2008), both of which recognized that evidence of mental illness may be introduced to negate the element of mens rea. But appellant never mentioned to the trial court that he was offering the psychologist's testimony for that purpose. His argument was that he was vulnerable to inducement, not that he lacked knowledge of his actions because of his mental illness. Accordingly, this complaint was not preserved. *See* Tex. R. App. P. 33.1.

And even if appellant had pressed an argument under *Jackson* and *Ruffin*, the psychologist did not testify that appellant lacked knowledge that he had solicited

10

sexual conduct in exchange for a fee. To the contrary, the psychologist conceded that a person with appellant's level of executive dysfunction would still be capable of having knowledge of his actions. Based on that concession, any error in the exclusion of the psychologist's testimony would have been harmless.

## CHARGE ERROR

Even though appellant did not advise the trial court that he was offering the psychologist's testimony under *Jackson* or *Ruffin*, he still requested a charge instruction based on those cases. The requested instruction invited the jury to consider the evidence of appellant's mental illness when deciding whether the State had proved that appellant had committed the offense with the requisite mental state.

In a second requested instruction, appellant invited the jury to consider whether he had been entrapped by the undercover officer.

The trial court denied both requested instructions. Now appellant argues that these rulings, when combined with the evidentiary ruling discussed above, amount to cumulative error.

We overrule all of these complaints because the jury was never presented with any evidence of mental illness or entrapment. Therefore, those issues never became law applicable to the case, and the trial court was not required to submit appellant's requested instructions. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013) (explaining that the evidence must raise the issue before the instruction is required).

11

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
         Justice

Panel consists of Justices Christopher, Bourliot, and Zimmerer.

Publish — Tex. R. App. P. 47.2(b).