

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00629-CR

**EX PARTE** Luis Alexis **GONZALEZ-MORALES**

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2022CRB000722L1
Honorable Leticia Martinez, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: December 20, 2023

REVERSED AND REMANDED

Appellant Luis Alexis Gonzalez-Morales appeals the trial court's order denying him habeas

relief.  We reverse the trial court's order and remand the case for further proceedings consistent

with this opinion.

### BACKGROUND

The habeas proceeding in this appeal occurred concurrently with the proceeding we

reviewed in *Ex parte Vazquez-Bautista*, No. 04-22-00630-CR, 2023 WL 8440339 (Tex. App.—

San Antonio Dec. 6, 2023, no pet. h.).  Accordingly, we have taken portions of the factual

background and discussion from that opinion as necessary.  *See id.*

---

[1] The Honorable Hugo D. Martinez is the judge of the Webb County Court at Law Number One.  Associate Judge
Leticia Martinez signed the order denying the habeas corpus relief at issue in this appeal.

As part of Operation Lone Star, Gonzalez-Morales, a noncitizen, was arrested for trespassing on private property in Webb County. *See* TEX. PENAL CODE § 30.05(a). He filed an application for writ of habeas corpus seeking dismissal of the criminal charge based on a violation of his state and federal rights to equal protection. Specifically, Gonzalez-Morales argued the State of Texas was engaging in selective prosecution in violation of the U.S. Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment because only men were being charged with misdemeanor criminal trespass. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3(a).

On August 19, 2022, the trial court held a hearing and heard testimony from State Trooper Juan Antonio Juarez III, who testified on July 26, 2022, he arrested Gonzalez-Morales along with four men and one woman for criminal trespass. The men were transported to the Jim Hogg County Temporary Booking Facility, and the woman was released to the U.S. Border Patrol. When asked about the typical process for someone who is apprehended for a misdemeanor in a case not related to OLS, Trooper Juarez testified people were sometimes given a citation to appear in court and sometimes taken into custody at the local jail. He further testified he had performed these types of arrests and citations for both men and women in cases not related to OLS. However, in OLS cases, he admitted only men who are arrested for criminal trespass are taken to the temporary detention center and women are "referred to U.S. Border Patrol."

The trial court also heard testimony from Claudia Molina of the Lubbock Private Defender's Office (LPDO), who testified she was unaware of any women who have been prosecuted for misdemeanor trespass as part of OLS. She further testified based on a report concerning OLS cases with appointed counsel through the LPDO, none of the five thousand five hundred misdemeanor trespass cases charged women. She added as for Webb County specifically, no misdemeanor trespass cases charged women.

No other witnesses testified, and at the end of the hearing, Gonzalez-Morales's attorney read the following stipulation of the parties into the record:

> [T]he State stipulates that women are not prosecuted for trespass as part of Operation Lone Star even when they [are] found trespassing. The defense stipulates that the women require separate housing and staffing from adult male detainees.[2]

After reading the stipulation, Gonzalez-Morales's attorney argued Gonzalez-Morales met his burden of proving a prima-facie selective prosecution claim and the burden shifted to the State to justify its discriminatory conduct under strict scrutiny. The trial court requested the State submit a written brief to respond, and the State argued Gonzalez-Morales had not met his burden and its conduct was justified. After the hearing, the State filed a written response, arguing the challenged action serves "important governmental objectives." The State did not attach any additional evidence supporting this assertion. On August 25, 2022, Gonzalez-Morales filed a reply, arguing the State had failed to justify its discriminatory actions and the remedy was dismissal of the case. The trial court ultimately denied Gonzalez-Morales's requested relief without making any specific findings. Gonzalez-Morales now appeals.

### DISCUSSION

We begin by noting Gonzalez-Morales is asserting the same appellate arguments the appellant Juan Esteban Vazquez-Bautista asserted in *Vazquez-Bautista*. *See id*. at *2. Because this appeal involves the same arguments and same evidentiary record as *Vazquez-Bautista*, for the same reasons explained below, we reverse and remand the case to the trial court with instructions to discharge Gonzalez-Morales from bail and dismiss with prejudice the information in the underlying proceeding. *See id*. at *6.

---

[2] The written notice of stipulation in the clerk's record states: "The State stipulates that women are not prosecuted for trespass as part of Operation Lone Star, even when they are found trespassing. The defense stipulates that women require separate housing and staffing from adult male detainees."

*A. Standard of Review*

When reviewing a trial court's decision to grant or deny habeas corpus relief, we defer to the trial court's assessment of the facts turning on an evaluation of credibility and demeanor. *Ex parte Perusquia*, 336 S.W.3d 270, 274-75 (Tex. App.—San Antonio 2010, pet. ref'd); *Ex parte Quintana*, 346 S.W.3d 681, 684 (Tex. App.—El Paso 2009, pet. ref'd). We review the facts in the light most favorable to the trial court's ruling and will uphold the ruling absent an abuse of discretion. *Perusquia*, 336 S.W.3d at 274-75; *Quintana*, 346 S.W.3d at 684. "We afford almost total deference to the trial court's determination of historical facts that are supported by the record, and to mixed questions of law and fact, when the resolution of those questions, turn[s] on evaluations of credibility and demeanor." *Perusquia*, 336 S.W.3d at 275. "If the resolution of the ultimate question turns on an application of law, we review the determination de novo." *Id*.

*B. Cognizability of a Pretrial Selective Prosecution Equal Protection Habeas Claim on the Basis of Sex Discrimination*

Gonzalez-Morales first argues the trial court erred in denying his requested relief because he properly raised his equal-protection claim in a pretrial writ of habeas corpus. As we explained in *Vazquez-Bautista*, we considered whether a pretrial selective prosecution claim based on sex discrimination was cognizable in a pretrial habeas corpus proceeding in *Ex parte Aparicio*, 672 S.W.3d 696, 713 (Tex. App.—San Antonio June 21, 2023, pet. granted). 2023 WL 8440339, at *3 (citing *Aparicio*). In *Aparicio*, we concluded a "selective-prosecution claim on the basis of equal protection is the type of claim 'in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" 672 S.W.3d at 709 (quoting *Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017)). We therefore held the claim was cognizable in a pretrial habeas proceeding. *Id*. Accordingly, for the

- 4 -

reasons explained in *Aparicio*, 672 S.W.3d at 707-13 and as applied in *Vazquez-Bautista*, 2023 WL 8440339, at \*3, we hold Gonzalez-Morales's pretrial habeas claim is cognizable.

### C. Prima Facie Claim of Selective Prosecution

Gonzalez-Morales next contends he met his burden of establishing a prima facie claim of selective prosecution. In *Vazquez-Bautista*, we considered this argument and concluded the appellant met his burden of proving a prima facie case for selective prosecution based on gender discrimination. 2023 WL 8440339, at \*3. We explained to establish a prima facie case of selective prosecution, the claimant must show the prosecutorial policy "had a discriminatory effect" and "it was motivated by a discriminatory purpose." *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). We then reviewed the evidence presented at the habeas hearing, noted it was similar to the evidence presented in *Aparicio*, and concluded it showed a discriminatory effect and discriminatory purpose. *Id*. Accordingly, for these same reasons, we hold Gonzalez-Morales met his burden of establishing a prima facia claim for selective prosecution. *See id*.

### A. State's Burden

We now turn to Gonzalez-Morales's final argument in which he asserts the State did not meet its burden of justifying its discriminatory conduct under the United States Constitution or the Texas Constitution. Again, we addressed this assertion in *Vazquez-Bautista*; there, we concluded our standard of review required us to address this assertion because unlike in *Aparicio*, the trial court denied Vazquez-Bautista's requested relief without making any findings. *Id*. at \*4 (explaining because we must uphold the trial court's judgment so long as it is correct on any theory of law applicable to the case, we must address whether the State met its burden to justify its discriminatory treatment of appellant). In addressing the merits, we explained under the Texas Equal Rights Amendment, "the State's discriminatory conduct is subject to strict scrutiny," and to justify its discriminatory conduct, the State must show its discriminatory classification "is

*narrowly tailored* to serve a compelling governmental interest." *Id*. at *5 (quoting *Aparicio*, 672 S.W.3d at 716) (emphasis added). We also pointed out we recently rejected the State's reliance on Governor Abbott's Proclamation and "testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees" as a compelling interest in *State v. Gomez*, No. 04-22-00872-CR, 2023 WL 7552682, at *5 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.). *Id*.

With these principles in mind, we turned to the habeas hearing and considered the State's attempts to justify its disparate conduct; according to the State, the "massive influx of undocumented migrants" posed a danger to public health and safety and Vazquez-Bautista failed to offer any "real alternatives" to handle this large influx. *Id*. We rejected the State's attempts to justify its conduct as narrowly tailored and serving a compelling interest, reasoning the State, not Vazquez-Bautista, bore the burden to justify its actions and the State failed to explain how its conduct was narrowly tailored to address the large influx. *Id*. For these same reasons, we reject the State's same attempts to justify its conduct and hold the trial court abused its discretion in denying Gonzalez-Morales relief on his selective prosecution claim under the Texas Equal Rights Amendment. *See id*.

Regarding Gonzalez-Morales's federal equal protection claim, we again rely on our reasoning in *Vazquez-Bautista*. *See id*. at *6. "The State's discriminatory conduct is subject to intermediate scrutiny," and to satisfy intermediate scrutiny, the State must show "the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id*. (quoting *Aparicio*, 672 S.W.3d at 715 and *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)). Here, the State's mere reliance on the Governor's Proclamation and the stipulation of the parties that women require separate housing from adult male detainees fails to show its discriminatory conduct is substantially

related to its important governmental interest of border security. *See id*. at \*6. Thus, as in *Vazquez-Bautista,* we hold the trial court abused its discretion in denying Gonzales-Morales relief on his federal equal protection claim. *See id*.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order denying Gonzalez-Morales's requested relief on his petition for writ of habeas corpus and remand the case to the trial court with instructions to discharge Gonzalez-Morales from bail and dismiss with prejudice the information in the underlying proceeding.

Luz Elena D. Chapa, Justice

Do Not Publish